UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

JHON KEVIN SARMIENTO GUERRERO,

                        Petitioner,                **MEMORANDUM & ORDER**
                                                    25-CV-5881 (EK)

            -against-

KRISTI NOEM, Secretary, U.S.
Department of Homeland Security, et
al.,

                        Respondents.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

        Petitioner Jhon Kevin Sarmiento Guerrero entered the
United States illegally in December 2022.  He was apprehended
shortly thereafter.  Officials released him with instructions to
appear at an Immigration and Customs Enforcement office within
sixty days, and he has been in administrative proceedings since.

        In June, the government detained him at a scheduled
appearance in Manhattan.  Then, the government took the position
that Sarmiento Guerrero's detention is required by statute, and
prevailed on this argument before the Board of Immigration
Appeals.  Sarmiento Guerrero contends that he is statutorily
eligible for bond pending the outcome of his removal
proceedings.  He seeks a writ of habeas corpus ordering his
release pending that outcome.  His petition — part of a
veritable cascade of similar petitions filed across the country

over the last several months — turns primarily on whether the Immigration and Naturalization Act makes Sarmiento Guerrero's detention mandatory or discretionary.

For the reasons that follow, Sarmiento Guerero's motion for a preliminary injunction is granted.

## I. Background

"In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." *Real Est. Bd. of N.Y., Inc. v. City of New York*, 786 F. Supp. 3d 788, 815 (S.D.N.Y. 2025).[1]  All facts discussed herein are undisputed unless otherwise noted. *See Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (party seeking preliminary injunction "is not entitled to have the court accept its untested representations as true if they are disputed").

## A. Petitioner's Arrest, Release, and Rearrest

Sarmiento Guerrero is a native of Colombia.  Pet. ¶ 2, ECF No. 1.  He was encountered and arrested by United States Customs and Border Patrol ("CBP") on December 29, 2022, "near" the United States-Mexico border.  Finnie Decl. ¶ 3, ECF No. 15-1.  CBP determined that he lacked valid entry documents.  *Id.*

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

Officers transported Sarmiento Guerrero to a border patrol station. *Id.* ¶ 5.

Following processing at that border patrol station, Sarmiento Guerrero was released into the country with instructions to appear before an Immigration and Customs Enforcement ("ICE") Deportation Officer in New York. *Id.* ¶¶ 5-6. As discussed below, the parties dispute whether this release constituted "parole."

Sarmiento Guerrero has since lived in New York, Pet. ¶ 30; obtained work authorization pursuant to 8 C.F.R. § 274a.12(c)(8), ECF No. 1-12; and worked in a grocery store. Pet. ¶ 31. He has applied for asylum, *id.* ¶ 29, and has no "history of evading legal processes in the United States," though the parties have expressed different views on whether he has made all required appearances. Mem. Order 5 ("IJ Order"), ECF No. 1-3; Pet. ¶ 3; Finnie Decl. ¶¶ 7-8.[2] Sarmiento Guerrero has no criminal record. ECF No. 1-13.

B.   **Immigration and Customs Enforcement Proceedings**

On June 9, Sarmiento Guerrero appeared at an ICE check-in and was detained. Pet. ¶ 4. Two weeks later, the government served Sarmiento Guerrero with a Notice to Appear at a removal proceeding, alleging that he is "an alien present in

---

[2] Page numbers in citations to record documents other than briefs refer to ECF pagination.

the United States who has not been admitted or paroled." ECF No. 1-14, at 2.

Sarmiento Guerrero sought a bond redetermination from an immigration judge ("IJ"). The IJ held a hearing and granted his request. *See* Order, ECF No. 1-4. There, the government argued that Sarmiento Guerrero was mandatorily detained pursuant to 8 U.S.C. § 1225(b)(2), and thus not eligible for bond. IJ Order 3. Rejecting this argument, the IJ concluded that Section 1225(b)(2) did not apply to Sarmiento Guerrero, who had resided in the United States for two years and was no longer "seeking admission," as that statute requires. *Id.* The government immediately appealed to the Board of Immigration Appeals ("BIA"), maintaining that Sarmiento Guerrero was subject to mandatory detention under Section 1225(b)(2), and argued for the first time that he was a flight risk. ECF No. 1-17. The government "automatically stay[ed]" the IJ's decision, pending a decision by the BIA. *See* 8 C.F.R. § 1003.19(i)(2); ECF No. 1-9. Sarmiento Guerrero therefore remained detained. ECF No. 1-15.

While this appeal was pending, the BIA issued a precedential decision adopting the government's statutory position. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Weeks later, the BIA sustained the government's appeal of Sarmiento Guerrero's release in a two-page order, concluding that he is subject to mandatory detention and that the IJ had no

jurisdiction over Sarmiento Guerrero's bond request.  Decision
4-5, ECF No. 1-19.

Sarmiento Guerrero filed this petition on October 21,
also moving for a temporary restraining order and a preliminary
injunction releasing him.  That day, the Honorable Nina R.
Morrison entered a TRO requiring Respondents to release
Sarmiento Guerrero.  ECF No. 6.  This Court held oral argument
on November 7, and on consent of the parties, extended the
temporary restraining order.  Tr. of Proceedings on Nov. 7, at
46:1-5 ("Hr'g Tr."), ECF No. 18.

In his petition, Sarmiento Guerrero brings several
claims.  First, he argues that Section 1225(b)(2) does not
apply, and that he is instead subject to the discretionary
detention provisions of Section 1226(a).  Second, he brings
procedural and substantive due process claims challenging the
automatic stay and his continued detention without a bond
hearing.  Finally, he argues that the automatic stay
impermissibly delegates the Department of Justice's authority to
the Department of Homeland Security.  Respondents maintain that
he must be detained pursuant to Section 1225(b)(2).

## II.  Discussion

A petitioner seeking a preliminary injunction must
establish (1) a likelihood of success on the merits; (2) a
likelihood of irreparable harm absent relief; (3) that the

balance of equities supports an injunction; and (4) that the
public interest favors an injunction.  *Winter v. Nat. Res. Def.
Council, Inc.*, 555 U.S. 7, 20 (2008).  When the government is a
party to a lawsuit, the final two factors merge.  *New York v.
U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020).

**A.    Sarmiento Guerrero Is Likely to Succeed on the Merits
        of His Statutory Argument**

The parties dispute which provision applies to
Sarmiento Guerrero's detention: Section 1225(b)(2), which
requires mandatory detention, or Section 1226(a), which provides
for discretionary detention (and bond).  Sarmiento Guerrero
argues that Section 1225(b) applies only to those detained at or
near the border, and that Section 1226(a) applies here.
Respondents argue that Section 1225(b)(2) applies.  As discussed
below, Sarmiento Guerrero has articulated the better reading.

1.    <u>The Statutory Text</u>

Section 1225 is titled "Inspection by immigration
officers; expedited removal of inadmissible arriving aliens;
referral for hearing."  The subsection at issue here — Section
1225(b)(2)(A) — reads as follows.  We add the bold type for the
phrases on which this interpretive dispute turns:

> Subject to subparagraphs (B) and (C), in the case of
> **an alien who is an applicant for admission**, if the
> examining immigration officer determines that **an alien
> seeking admission** is not clearly and beyond a doubt
> entitled to be admitted, the alien shall be detained

for a proceeding under section 1229a of this title.
Both sides agree that Sarmiento Guerrero is an "alien who is an
applicant for admission." Hr'g. Tr. 3:22-24; *id.* at 20:15-19.
They dispute whether Sarmiento Guerrero is "an alien seeking
admission." The Immigration and Naturalization Act ("INA") does
not define the phrase "seeking admission."

Sarmiento Guerrero argues that seeking admission
"refers to those who are presenting themselves at the border or
who are recently apprehended after entering." *Id.* at 4:12-14.
That reading is consistent with the conclusion reached in
several recent district court cases, including in this circuit.[3]
Respondents' reading, in contrast, would subsume every
"applicant for admission" within the larger category of aliens
"seeking admission." *Id.* at 21:7-8. A smaller number of cases
have adopted the government's position.[4]

That reading has two problems. First, it would mean
that Congress used two different phrases to mean the same thing

---

[3] *See, e.g.*, *Alvarez Ortiz v. Freden*, No. 25-CV-960, 2025 WL 3085032, at
*7 (W.D.N.Y. Nov. 4, 2025) (reading "seeking admission" to "refer to seeking
*physical entry at the border*, not the legal right to enter" (emphasis
added)); *J.G.O. v. Francis*, No. 25-CV-7233, 2025 WL 3040142, at *3 (S.D.N.Y.
Oct. 28, 2025) (reading "seeking admission" to "require[] an alien to
*continue* to want to *go into* the country"); *Jimenez v. FCI Berlin, Warden*, No.
25-CV-326, 2025 WL 2639390, at *8 (D.N.H. Sep. 8, 2025) (concluding that
Section 1225(b)(2)(A) cannot apply to those "who ha[ve] already entered the
country and ha[ve] been residing here for over two years").

[4] *See Mejia Olalde v. Noem*, No. 25-CV-168, 2025 WL 3131942, at *5 (E.D.
Mo. Nov. 10, 2025); *Rojas v. Olson*, No. 25-CV-1437, 2025 WL 3033967, at *8-9
(E.D. Wis. Oct. 30, 2025); *Vargas Lopez v. Trump*, No. 25-CV-526, 2025 WL
2780351, at *9 (D. Neb. Sep. 30, 2025); *Chavez v. Noem*, No. 25-CV-2325, 2025
WL 2730228, at *4-5 (S.D. Cal. Sep. 24, 2025).

in the same provision.  But "[i]n a given statute, . . .
different terms usually have different meanings."  *Pulsifer v.
United States*, 601 U.S. 124, 149 (2024).  Secondly, respondents
introduce surplus language into the statute.  On their reading,
Congress could have replaced "an alien seeking admission" with
"the alien" or even "he or she" — much clearer expression, with
(ostensibly) no change in meaning.

      The government's position is thus "at odds with one of
the most basic interpretive canons, that a statute should be
construed so that effect is given to all its provisions, so that
no part will be inoperative or superfluous."  *Corley v. United
States*, 556 U.S. 303, 314 (2009).  While it can be overcome in
many circumstances, the superfluity canon is at its "strongest
when an interpretation would render superfluous another part of
the same statutory scheme."  *Marx v. Gen. Revenue Corp.*, 568
U.S. 371, 386 (2013).  And here, "not only are the two terms in
the same statutory scheme, they are in the same sub-paragraph
and in the same single sentence, and only seven words separate
the two terms."  *Guartazaca Sumba v. Crowley*, No. 25-CV-13034,
2025 WL 3126512, at *4 (N.D. Ill. Nov. 9, 2025).  Thus, they
"must mean something different."  *Id.*

    2.  <u>The Statute's Context</u>

      The "context" and "overall statutory scheme" support
Petitioner's reading, as well.  *Gundy v. United States*, 588 U.S.

128, 141 (2019). "Every part of [Section] 1225 suggests that it applies to aliens who are arriving in the country." *J.G.O. v. Francis*, No. 25-CV-7233, 2025 WL 3040142, at *4 (S.D.N.Y. Oct. 28, 2025). For example, the aforementioned subparagraph (C) allows for immediately returning those "*arriving on land* (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States" to that territory pending proceedings. 8 U.S.C. § 1225(b)(2)(C) (emphasis added). The statute also includes other "carve-outs" in Subsection 1225(b)(2)(A) involving "various means of arriving in the United States." *Alvarez Ortiz v. Freden*, No. 25-CV-960, 2025 WL 3085032, at *8 (W.D.N.Y. Nov. 4, 2025). These provisions suggest that "seeking admission" "refer[s] to those who are presenting themselves at the border, or who were recently apprehended just after entering." *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025).

At the same time, Section 1226 is "filled with language that would most clearly apply to people who are already here." *J.G.O.*, 2025 WL 3040142, at *4. For example, Section 1226(d) requires the attorney general to devise a system for state and local law enforcement officers to determine whether arrested individuals are aliens. 8 U.S.C. § 1226(d). Section 1226(a) allows for arresting an alien when the Attorney General

has issued a warrant.  *Id.* § 1226(a).  Both provisions only make sense for aliens already within the country.

Zooming out, Petitioner's read is consistent with the broader statutory scheme — specifically, the INA subchapter on "Inspection, Apprehension, Examination, Exclusion, and Removal." 8 U.S.C. ch. 12, subch. II, pt. IV.  As another district court recently observed, the first six sections thereof — Section 1221-1225 and 1225a — all address aliens arriving in the United States (or, in the case of Section 1225a, those inspected at foreign airports immediately before departing for the United States).[5]  "It would make little sense to sandwich [S]ection 1225 between sections dealing exclusively with arrival or attempted arrival of noncitizens if it were intended to broadly apply to all noncitizens present in the United States who have not been admitted."  *Alvarez Ortiz*, 2025 WL 3085032, at *9.

The operative section headings — a tool "available for the resolution of a doubt about the meaning of a statute" — further buttress Petitioner's reading.  *Cunningham v. Cornell Univ.*, 604 U.S. 693, 704 (2025).  Section 1225 is titled: "Inspection by immigration officers; expedited removal of

_____

[5] *See* 8 U.S.C. § 1221 ("Lists of alien and citizen passengers arriving and departing"); *id.* § 1222 ("Detention of aliens for physical and mental examination"); *id.* § 1223 ("Entry through or from foreign territory and adjacent islands"); *id.* § 1224 ("Designation of ports of entry for aliens arriving by aircraft") *id.* § 1225 ("Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing"); *id.* § 1225a ("Preinspection at foreign airports"); *see also Alvarez Ortiz*, 2025 WL 3085032, at *9 (making this precise point).

inadmissible *arriving aliens*; referral for hearing."  8

U.S.C. § 1225 (emphasis added).  "The added word of 'arriving'

indicates that the statute governs 'arriving' noncitizens, not

those present already."  *Barrera v. Tindall*, No. 25-CV-541, 2025

WL 2690565, at *4 (W.D. Ky. Sep. 19, 2025).

    3.  <u>Precedent</u>

       Neither the Supreme Court nor the Second Circuit has

defined the term "seeking admission."  Still, the Supreme Court

has offered a number of observations about the operation of

Sections 1225 and 1226, and the INA generally, that support the

petitioner's reading of the statutes at issue.

       The Court has explained that "[t]he distinction

between an alien who has effected an entry into the United

States and one who has never entered runs throughout immigration

law."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Respondents' reading would render Section 1225 equally

applicable to both sides of the distinction, calling the Supreme

Court's dichotomy into some question.

       More specifically, the Supreme Court has touched on

the relationship between Sections 1225 and 1226.  In *Jennings v.

Rodriguez*, the Court explained that Section 1225 authorizes "the

Government to detain certain aliens seeking admission *into the

country*," while Section 1226 "authorizes the Government to

detain certain aliens *already in the country* pending the outcome

of removal proceedings."  583 U.S. 281, 289 (2018) (emphasis added); *see also id.* at 288 (Section 1226 "generally governs the process of arresting and detaining" aliens "once inside the United States").  That reading is in tension, at the very least, with Respondents' broad understanding of Section 1225(b)(2).

Finally, in *Thuraissigiam*, the Supreme Court held that the protections of the writ of habeas corpus did not extend to an individual detained twenty-five yards into the United States. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119-20 (2020).  In doing so, it explained that even if released, the petitioner "would remain subject to arrest, detention, and removal," citing Section 1226(a).  *Id.* at 119; *see also id.* at 106-07 (describing detention and expedited removal proceedings for certain asylum seekers "apprehended at or near the border").

We add one note in response to the Respondents' contention that Sarmiento Guerrero was "paroled" into the country and thus may be treated via the "entry fiction" as detained at the border.  Hr'g. Tr. 27:2-4 ("They remain at the border for purposes of immigration law and are treated as applicants for admission into the country."); Opp'n 18, ECF No. 15.  The so-called entry fiction is that "aliens who have been denied admission to the United States yet are present within its borders are treated, for constitutional purposes, as if stopped at the border."  *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648

(S.D.N.Y. 2018); *see also* 8 U.S.C. § 1182(d)(5)(A) (describing discretionary parole for applicants for admission and explaining that "when the purposes of such parole shall, in the opinion of the [Secretary], have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission").

"[E]ven assuming that the entry fiction would apply to [Sarmiento Guerrero], it wouldn't affect this *statutory* analysis." *J.G.O.*, 2025 WL 3040142, at *4. Parole allows aliens to physically enter the country but without "admission." 18 U.S.C. § 1182(d)(5)(A). The caselaw cited by Respondents thus stands for the uncontested proposition that Sarmiento Guerrero remains an "applicant for admission," despite his alleged parole. Opp'n 18-19 (citing, for example, *United States v. Balde*, 943 F.3d 73, 84 (2d Cir. 2019) ("Parole does not change parolees' immigration status: they remain 'at the border' for the purposes of immigration law and are treated as applicants for admission into the country.")).

But parole status speaks only to whether Sarmiento Guerrero has been admitted, not whether he was *seeking* admission at the time of his detention in June, as that term is used in Section 1225(b)(2)(A). Respondents' reference to the entry fiction thus conflates Section 1225(b)(2)(A)'s distinct

requirements that an alien be an applicant for admission, and that he be seeking admission. *See id.* at 19 ("Petitioner is therefore an applicant for admission."). It does not undo the Court's conclusion above that the "procedure Congress authorized" is that of Section 1226(a). *J.G.O.*, 2025 WL 3040142, at *4.

Sarmiento Guerrero has thus established a likelihood of success on the merits on his statutory claim. Because "resolution of [this] statutory argument" resolves this *Winter* factor, "the Court need not discuss the merits of his constitutional claim about due process" or the legality of the automatic stay. *Guartazaca Sumba*, 2025 WL 3126512, at *5; *see also Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*, 467 U.S. 138, 157 (1984) ("It is a fundamental rule of judicial restraint . . . that this Court will not reach constitutional questions in advance of the necessity of deciding them.").

## B. Petitioner Faces Irreparable Harm

To demonstrate irreparable harm, a petitioner must show that "absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). The

petitioner must also show that there is a "continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002).

Petitioner's detention satisfies this requirement. "[E]very minute that someone is unlawfully denied freedom results in an injury that really can never be remedied." *Alvarez Ortiz*, 2025 WL 3085032, at *11. Respondents argue that continued detention alone "does not equate to irreparable harm," as detention pending removal is constitutionally permissible. Opp'n 31 (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020)). It is indeed constitutionally permissible (in the right circumstance), but detention in violation of the applicable statutes — as we have identified here — will still work irreparable harm, almost by definition.

Respondents also argue that Sarmiento Guerrero waited several months after his detention to file this petition, weakening his claim of irreparable harm. *Id.* at 32. This argument is unavailing, as Sarmiento Guerrero filed his petition less than a week after the BIA decided his appeal, and frequently requested release while it was pending. *See* ECF No. 1-20.

## C. The Balance of Equities and Public Interest Favor Relief

When the government is a party, the balance-of-equities and public-interest factors merge.  *New York*, 969 F.3d at 58-59.  This merged factor favors Sarmiento Guerrero.

"[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations."  *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

On the other side of the ledger, Respondents maintain that it is "within the public interest to ensure that aliens unlawfully present . . . do not abscond while their removal proceedings are pending."  Opp'n 34.  This is surely true.  But in this particular case, the petitioner has a demonstrated track record of appearance.  And if — as an immigration judge has found — Sarmiento Guerrero "is not a danger or a flight risk, then it is in no one's interest to detain him."  *Alvarez Ortiz*, 2025 WL 3085032, at *11.

**D.  The Appropriate Remedy Is Release on Bond as Set by the Immigration Judge**

When no bond hearing has been held, "the appropriate remedy will usually be a bond hearing to consider the merits of release."  *Romero v. Hyde*, No. 25-CV-11631, 2025 WL 2403827, at *13 (D. Mass. Aug. 19, 2025); *accord Alvarez Ortiz*, 2025 WL 3085032, at *11.  Here, however, Sarmiento Guerrero has already had a bond hearing at which both sides argued the merits of

release.  This remedy is already in effect, given the TRO previously entered.  Thus, the appropriate remedy here is simply to restore this case to the posture it was in following the IJ's decision and prior to the action of the BIA.

### III. Conclusion

Petitioner's motion for a preliminary injunction will be granted, in part, following a forty-eight hour stay to allow the government to appeal this order.  Barring action by the Court of Appeals, the Petitioner shall satisfy the terms of the immigration judge's release order by November 20.  To the extent the Petitioner does so, the Respondents shall not, pending further action by this Court or the Court of Appeals, act to detain Petitioner on the basis of 8 U.S.C. § 1225(b)(2).

By December 16, the Respondents are ordered to show cause why the petition should not be granted for the reasons stated in this order.  Petitioner's response shall be due on January 6, and Respondents shall reply on or before January 16.

SO ORDERED.


_/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge


Dated:     November 18, 2025
           Brooklyn, New York